FILED

2013 Feb-12  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,** | ) ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.: 4:12-CV-3731-VEH** ) |
| **SNEAD DOOR, LLC, et al.,** | ) ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

### I.     INTRODUCTION

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") initiated this non-jury insurance coverage lawsuit arising under the Federal Declaratory Judgment Act and Alabama law against Defendants Thomas E. Bell ("Mr. Bell") and Snead Door, LLC ("Snead") on October 29, 2012. (Doc. 1).  Penn National filed an amended complaint (Doc. 10) on December 14, 2012.  The dispute "arises from the construction of [Mr.] Bell's home in Albertville, Marshall County, Alabama."  (*Id.* ¶ 6).

Pending before the court is Penn National's Motion for Entry of Default

Judgment Against Snead Door, LLC  (Doc. 18) (the "Motion") filed on January 15, 2013.  For the reasons discussed below, the Motion is due to be granted.

## II.   STANDARD ON DEFAULT JUDGMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  However, entry of default under Rule 55(a) does not entitle a party to his requested relief.  Either the clerk or the court must enter a default judgment under Rule 55(b).  Here, the court, and not the clerk, acts pursuant to Rule 55(b)(2).

Generally, the entry of a default judgment is committed to the discretion of the district judge.  *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).[1]  The factual allegations of a well-pleaded complaint are taken as true; hence, the court must decide if these accepted facts state a cause of action for which relief can be granted. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1987); *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment entered."); *Descent v. Kolitsidas,* 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) (same).

---

[1]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

When the amount of damages due is uncertain, an evidentiary hearing is often required to determine the sum the defaulting defendant must pay. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 (11th Cir. 2005). On the other hand, if a specific sum or non-monetary relief is sought, a hearing may not be necessary.

As explained by Judge William H. Steele of the United States District Court for the Southern District of Alabama regarding default judgments:

> <u>The law is clear, however, that Lacey's failure to appear and the Clerk's subsequent entry of default against her do not automatically entitle plaintiffs to a default judgment.</u> Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla.2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

*Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 591-92 (S.D. Ala. 2007) (emphasis added).

## III.    PROCEDURAL HISTORY AND BACKGROUND

### A.    Procedural History

On January 10, 2013, the clerk entered a default against Snead (Doc. 17) pursuant to Rule 55(a) of the Federal Rule of Civil Procedure due to its failure to answer or otherwise respond to Penn National's complaint (Doc. 1) after having been duly served with it on December 7, 2012.  (Doc. 8).  The Motion seeks to have a default judgment entered by the court in favor of Penn National.

On January 15, 2013, the court entered an order (Doc. 19), requiring Snead to show cause no later than February 5, 2013, why the Motion should not be granted. The clerk sent this show cause order to Snead via regular and certified mail on January 15, 2013.  (*See* CM/ECF margin entry dated Jan. 15, 2013).  On January 18, 2013, the clerk filed in a signed domestic return receipt indicating a delivery date of January 17, 2013, relating to this mailing.  (Doc. 21).

The show cause deadline of February 5, 2013, has passed without any response from Snead.

### B.    Factual Background Deemed Admitted by Snead

In 2007, Hulsey-Nezlo Construction, LLC ("Hulsey") constructed Mr. Bell's home.  (Doc. 10 ¶ 7).  Mr. Bell purchased the home from Hulsey on or about July 2007 and began occupying the home on or about October 2007.  (*Id.*).  On or about

4

August 2009, Bell alleges that he discovered the home contained drywall manufactured in China ("Chinese Drywall").  (*Id.*).

Snead is in the business of buying and selling construction materials. (Doc. 10 ¶ 8).  Mr. Bell contends that Snead sold the subject Chinese Drywall to Hulsey.  (*Id.*). Snead did not install the Chinese Drywall in the Mr. Bell's home or otherwise construct Mr. Bell's house.  (Doc. 10 ¶ 9).

Mr. Bell alleges that Chinese Drywall "emits sulfur compounds, including carbon disulfide, carbonyl sulfur and hydrogen sulfide and is suspected to contain and/or admit several other substances including but not limited to strontium, arsenic, beryllium, lead, mercury, crystalline silica, lime and components of fly ash."  (Doc. 10 ¶ 10).  Mr. Bell further claims that the "substances contained in and/or emitted by Chinese Drywall are extremely hazardous and exposure to these substances is known to cause serious health problems", some of which Mr. Bell contends he has suffered since occupying his home.  (*Id.* ¶ 11).

Mr. Bell also alleges that "[w]hen combined with even the small amount of heat and moisture in the air, the sulfur compounds in and emitted by Chinese Drywall create sulfuric acid, which is known to corrode copper and other metals such as chrome, copper, brass and silver" and that Chinese Drywall in his home has caused and continues to cause "significant corrosion to copper piping and wiring." (*Id.* ¶ 12).

Mr. Bell contends that his home has been rendered "virtually worthless" as a result of the Chinese Drywall. (*Id.* ¶ 13).

On November 25, 2009, Mr. Bell filed a complaint in the Circuit Court of Marshall County, Alabama against Hulsey and various fictitious defendants (the "Bell Litigation"). (Doc.  10 ¶ 14).  On November 12, 2010, Bell filed a substituted complaint naming Snead as a defendant and asserting claims against Snead for breach of contract, breach of implied warranty of habitability, breach of express warranty, breach of the implied covenant of good faith and fair dealing, general negligence, gross negligence, negligent hiring and retention, negligent supervision and training, respondeat superior/vicarious liability, breach of implied warranties of fitness and merchantability, breach of warranty for fitness, failure to warn, fraud, intentional/negligent misrepresentation, unjust enrichment, third-party beneficiary, deceptive trade practices, the Alabama Manufacturers' Liability Doctrine and acting in concert.  (Doc. 10 ¶ 15).

Penn National issued a commercial general liability insurance policy, BP9 0628480, insuring Snead for the policy periods of January 10, 2006 – January 10, 2012 (the "Policy").  (*Id.* ¶ 16; Doc. 18 at 11-29).  Upon Snead providing notice of the Bell Litigation, in April 2011, Penn National began providing Snead with a defense subject to a reservation of rights.  (*Id.*).

On June 10, 2011, Penn National moved to intervene in the Bell Litigation for the limited purpose of participating in discovery and submitting special verdict forms and/or special interrogatories to the jury.  (Doc. 10 ¶ 17).  The circuit court judge ruled from the bench that Penn National could participate in discovery but delayed ruling on the motion to intervene.  (*Id.*). On October 4, 2012, the judge entered an order denying Penn National's motion to intervene.  (*Id.*).

Discovery in the Bell Litigation has been completed.  (Doc. 10 ¶ 18).  The case has not yet been set for trial.  (*Id.*).

**C.     Relevant Policy Language Deemed Admitted by Snead**[2]

**SECTION I – COVERAGES**

**1.     Business Liability**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . . .

b.     This insurance applies to "bodily injury" and "property damage" only if:

---

[2]  A copy of the Policy is attached to the Motion as Exhibit C.  (Doc. 18 at 11 at 29).

   (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" . . .

## SECTION V – DEFINITIONS

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . . .

20. The Policy also contained the following exclusions

**B. Exclusions**

1. Applicable to Business Liability Coverage

This insurance does not apply to: . . .

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or    threatened discharge, dispersal, seepage, migration, release or escape of pollutants: . . .

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible, or

(d) At or from premises, site or location on which any insured or any contractors  or subcontractors working directly or indirectly on any insured's behalf are  performing operations;

   (i)  If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or . . .

8

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. . . .

**k.      Damage To Your Product.**

"Property damage" to "your product" arising out of it or any part of it. . . .

**m.      Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)      A delay or failure by you or anyone acting on your behalf to      perform a contract or agreement in accordance with its terms.

**n.      Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization

9

because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## IV.   ANALYSIS

### A.     General Principles

A federal court sitting in diversity, as is the situation in this lawsuit, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, and applies the law of the state where the contract was formed. *St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009) (citing *Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007)).

As set forth in Penn National's amended complaint, Snead, its insured under the Policy, is an Alabama limited liability company. (Doc. 10 ¶ 3). The address for Snead listed on the Policy's declarations page (Doc. 18 at 13) is an Alabama one, as is the address for the insurance agent. (*Id.*). Additionally, the Policy's endorsement schedule page identifies "BP0101 12/00" at "ALABAMA CHANGES". (*Id.* at 14). Consequently, this court is being asked to interpret an Alabama insurance contract, and Alabama substantive law applies.

Alabama law generally imposes the burden of proof on policy coverage issues on the insured, while the burden of proving applicability

10

of a policy exclusion rests with the insurer. Compare *Jordan v. National Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991) ("Under Alabama law the general rule is that the insured bears the burden of proving coverage.") with *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) ("In general, the insurer bears the burden of proving the applicability of any policy exclusion."). Exceptions to coverage are interpreted as narrowly as possible to maximize coverage, and are construed strongly against the insurance company that issued the policy. *See Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002).

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp. 2d 1295, 1303 (S.D. Ala. 2008). Also,

> Under Alabama law, it is well established "that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured." [*St. Paul Mercury Ins. Co. v.*] *Chilton-Shelby* [*Mental Health Center*], 595 So. 2d [1375,] at 1377 [(Ala. 1992)]; *see Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) ("To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company."). It is equally well settled, however, that insurers have the right to limit their liability by writing policies with narrow coverage. *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987). If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy by making a new contract for the parties. *Id.*

*St. Paul Fire and Marine Ins. Co.*, 572 F.3d at 898.

In this coverage case, Penn National contends, by virtue of its declaratory complaint, that it does not owe a duty to defend Snead in the Bell Litigation due to the application of three exclusions under the Policy: (1) the "Pollution" Exclusion;

11

(2) the "Your Product" Exclusion; and (3)  the "Loss, Cost or Expense" Exclusion.

**B.     Duty to Defend**

"The law is clear that an 'insurer's duty to defend is more extensive than its duty to indemnify.'" *Pennsylvania Nat. Mut. Cas. Ins. Co.*, 550 F. Supp. 2d at 1304 (internal marks omitted) (quoting *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003)).  "The insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured." *Alfa Mut. Ins. Co., Inc. v. Morrison*, 613 So. 2d 381, 382 (Ala. 1993).  "If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured." *St. Paul Fire and Marine Ins. Co.*, 572 F.3d at 895 (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)); *see also ERA Oxford*, 572 F.3d at 895 ("If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured.") (citation omitted).

That said, "[w]hen any 'uncertainty' exists about whether the occurrence is covered under the policy, 'the court is not limited to the bare allegations of the complaint in the action against the insured but may look to facts which may be proved

by admissible evidence.'" *Great American Ins. Co. v. Baddley and Mauro, LLC*, 330 Fed. App'x 174, 177 (11th Cir. 2009) (quoting *Hartford Cas. Ins. Co.*, 928 So. 2d at 1009 (quoting, in turn, *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001)) (bracketed text omitted).

Here, the court assumes without deciding that the underlying allegations of the Bell Litigation are sufficient to trigger an "occurrence" under the Policy.  However, for the reasons explained below, the court finds that Penn National is not obligated to defend Snead in the Bell Litigation because the exclusions operate to preclude coverage under the Policy.

### 1.    The "Pollution" Exclusion

The Policy broadly defines pollutant as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  Further, the Policy excludes from coverage claims of "'bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants."  Because the Bell Litigation involves allegations about pollutants stemming from the use of Chinese Drywall in the construction of Mr. Bell's home (Doc. 10 ¶¶ 10-12), the Pollution Exclusion precludes coverage for Snead against Mr. Bell's claims.

### 2.      The "Your Product" Exclusion

Snead Door did not install Chinese Drywall in Mr. Bell's home. (Doc. 10 ¶¶ 9, 27). Instead, Snead purchased drywall for resale and resold the product to Hulsey. (*Id.* ¶¶ 8, 28).

As articulated above, the Policy defines "your product" as "any goods, other than real property, manufactured, sold, handled, distributed or disposed of by" the insured including "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product' and the providing or failure to provide warnings or instructions."

Therefore, the Chinese Drywall sold by Snead to Hulsey (and installed into Mr. Bell's home by Hulsey) comes within the definition of "your product" under the Policy.   Further, because the Bell Litigation turns upon Hulsey's use of Chinese Drywall (allegedly provided by Snead to Hulsey) in the construction of Mr. Bell's home, the "Your Product" Exclusion precludes coverage for Snead against Mr. Bell's claims.

### 3.      "Loss, Cost or Expense" Exclusion

The Chinese Drywall in Mr. Bell's home has been withdrawn from the market, and Mr. Bell alleges that it will need to be replaced.  (Doc. 10 ¶ 33).  The Policy excludes from coverage "any loss, cost or expense" associated with the repair,

replacement, or disposal of a withdrawn or recalled product. Therefore, the "Loss, Cost or Expense" Exclusion precludes coverage against that portion of the Bell Litigation which seeks reimbursement related to the removal and replacement of the recalled product (*i.e.*, the Chinese Drywall) supplied by Snead.

### C.  Duty to Indemnify

Because the duty to defend is broader than the duty to indemnify, and this court has found that there is no duty to defend based on the application of the Policy's exclusions to the record before it, the court necessarily concludes that Penn National does not owe Snead any duty to indemnify. *See, e.g., United States Fidelity and Guarantee Co. v. Bonitz Insulation Co. of Alabama*, 424 So. 2d 569, 572 (Ala. 1982) (holding that, because there was no coverage under the applicable insurance policy because there was not an "accident," the insurer owed no duty to defend its insured "and also, of course, no liability for any judgment rendered in that action"); *see also Employers Mut. Cas. Co. v. Evans*, 76 F. Supp. 2d 1257, 1262 (N.D. Ala. 1999) (noting that "a determination that there is no duty to defend may well determine the duty to indemnify issue").

### V.  CONCLUSION

Accordingly, for the reasons explained above, the Motion is due to be granted. The court will enter a separate order.

**DONE** and **ORDERED** this 12th day of February, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge